# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| SHARON W., | Case No.  1:24-CV-00184-REP |
| Plaintiff, | |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| LELAND DUDEK, Acting Commissioner of Social Security, | |
| Defendant. | |

Pending is Petitioner Sharon W.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 15) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits. *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a sixty-three-year-old woman who suffers from degenerative disc disease, knee pain, plantar fasciitis, osteoarthritis, obesity, anxiety, and depression.  AR 332, 1179-1180.  Petitioner has applied for disability benefits twice.  Petitioner first filed for disability benefits in 2017.  AR 119.  The claim was denied at all levels.  *Id.*

Several months later, on June 5, 2019, Petitioner filed the applications for social security disability income ("SSDI") and supplemental security income ("SSI") that form the basis of this appeal.  AR 13.  Petitioner originally alleged a disability onset date of November 7, 2016, but

**MEMORANDUM DECISION AND ORDER - 1**

later amended this to June 5, 2019.  AR 13, 1175.  As with her prior claim, Petitioner's current

claim was denied at every level of review in front of the Social Security Administration.  AR 13-

25.  This time Petitioner appealed to federal court.  *See Sharon W. v. Kijakazi*, No. 1:22-CV-

00013-DKG, 2023 WL 246391, at *1 (D. Idaho Jan. 18, 2023).  On January 18, 2023, the

Honorable Debora K. Grasham issued an opinion reversing the decision of the Social Security

Administration.  *Id*.

On remand, the claim was assigned to a new ALJ.  AR 1175-1192.  After holding a

disability hearing, the ALJ issued yet another decision rejecting Petitioner's claim for disability

benefits.  *Id.*  Petitioner did not appeal this decision to the Appeals Council.  After sixty days,

consequently, the ALJ's decision became the final decision of the Commissioner of Social

Security.  AR 1173.

Having exhausted her administrative remedies, Petitioner filed this case.  Petitioner raises

three points of error.  First, Petitioner contends that the ALJ improperly credited the opinions of

the state agency reviewers over the opinions of her treating provider Dr. Mark Williams.  Pt.'s

Br. at 7-12 (Dkt. 15).  Second, Petitioner maintains that the ALJ failed to provide clear and

convincing reasons for rejecting her subjective symptom testimony.  *Id.* at 13-17 (Dkt. 15).

Finally, Petitioner argues that the ALJ failed to provide adequate reasons for rejecting the

statement of her mother.  *Id.* at 17-19.

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th

Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are

conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the

**MEMORANDUM DECISION AND ORDER - 2**

ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error.  *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098.  Considerable weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable

**MEMORANDUM DECISION AND ORDER - 4**

impairment or combination of impairments, disability benefits are denied.  20 C.F.R.
§§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments;
that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.
Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the
answer is yes, the claimant is considered disabled under the Social Security Act and benefits are
awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor
equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds
to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's
residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.
20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do
physical and mental work activities on a sustained basis despite limitations from her
impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she
performed within the last 15 years, or 15 years prior to the date that disability must be
established, if the work was substantial gainful activity and lasted long enough for the claimant
to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform
past relevant work because of her impairments, the burden shifts to the Commissioner to show
that the claimant retains the ability to do alternate work and to demonstrate that such alternate
work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th

**MEMORANDUM DECISION AND ORDER - 5**

Cir. 2014).  If the claimant can do such other work, she is not disabled; if the claimant cannot do

other work and meets the duration requirement, she is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments:

degenerative disc disease, dysfunction of the bilateral knees, plantar fasciitis, osteoarthritis of the

bilateral hands, osteoarthritis of the right shoulder, and obesity.  AR 1179.  The ALJ determined

that these impairments limit Petitioner's ability to engage in work-related activities in a variety

of manners, including that Petitioner is limited to sedentary work and can only reach overhead

occasionally.  AR 1184.  Based on the testimony of a vocational expert ("VE"), the ALJ

concluded that these limitations would not prevent Petitioner from returning to her past work as a

printed item assembler, a customer service representative, an insurance clerk, and an order clerk.

AR 1189-1190.  The ALJ also found that Petitioner could also perform other work, including

work as a data entry clerk, appointment clerk, and admitting clerk.  AR 1190-1191.  The ALJ,

therefore, found that Petitioner was not disabled.  AR 1192.

## DISCUSSION

I.      The Medical Opinion Evidence

a.  The Competing Opinions of the Agency Reviewers and Dr. Williams

Petitioner reports that she has suffered from knee, back, hand, and foot pain for years.

The ALJ was faced with four medial opinions,[1] from three doctors, assessing the impact of this

pain on Petitioner's functioning.

First, on September 5, 2019, a state agency consultant, Dr. Leslie E. Arnold, reviewed

Petitioner's function reports and her medical records, including her history of osteoarthritis in the

---

[1] For ease of reference, the Court uses the term "medical opinions," colloquially, to include both the "medical opinions" and the "prior administrative medical findings."  *See* 20 C.F.R. § 404.1560.

hands and knees.  AR 127-128.  Dr. Arnold opined that Petitioner could sit for six hours in a workday, stand or walk for two hours in a workday, occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, occasionally reach overhead, and frequently (but not constantly)[2] handle and finger.  AR 125-126.

Second, on January 9, 2020, another state agency consultant, Dr. Robert E. Vestal, reviewed Petitioner's updated medial record, which included several new treatment records that were not available to Dr. Arnold.  AR 155-156.  Based on this review, Dr. Vestal agreed with Dr. Arnold about Petitioner's ability to sit, stand, walk, lift, carry, reach, handle, and finger.  AR 153-154.

Third, on October 26, 2020, an orthopedic specialist, Dr. Mark S. Williams, whom Petitioner saw for help with her foot and hand pain, completed a questionnaire about Petitioner's ability to perform work-related activities.  AR 1168-1171.  In many regards, Dr. Williams agreed with the state agency reviewers or thought Petitioner was even more physically able than previously rated.  For example, Dr. Williams attested that Petitioner could sit for eight hours a day, stand or walk for two hours a workday, occasionally lift and carry 30 pounds, frequently lift and carry 20 pounds, and frequently reach.  AR 1168-1169.  There were a few areas, however, in which Dr. Williams believed that Petitioner was more limited, including in her balancing and handling.  *Compare* AR 125-127 and 153-155 *with* AR 1168-1170.  Of relevance here, Dr. Williams opined that Petitioner could only handle "occasionally," *i.e.* up to 1/3 of the workday. AR 1170.

---

[2] For physical activities, like handling, the Dictionary of Occupational Titles ("DOT") describes how frequently that activity must be done using four categories: (1) never; (2) occasionally (meaning up to 1/3 of the workday); (3) frequently (meaning from 1/3 to 2/3 of the workday); or (4) constantly (meaning 2/3 or more or the workday).  *See* Dictionary of Occupational Titles, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (2016).

**MEMORANDUM DECISION AND ORDER - 7**

Over the following years, Dr. Williams continued to treat Petitioner for various types of foot and hand pain.  When the case was remanded for further proceedings, Dr. Williams issued an updated opinion, dated October 3, 2023, regarding Petitioner's physical functioning.  AR 2425-2428.  With some minor variations, Dr. Williams's 2023 opinion matches his 2020 opinion.  Both opinions, for instance, indicate that Petitioner can sit all day, can stand or walk for two hours in a day, occasionally lift and carry 30 pounds, can frequently lift and carry at least 10 pounds, can frequently reach, and can occasionally handle.  AR 1168-1170 and 2425-2427.  The one major difference is that in 2023 Dr. Williams filled out a section of the form on absenteeism that he had left blank in 2020.  *Compare* AR 1168 *with* 2425.  In this section, Dr. Williams estimated that Petitioner could only work for two hours a day and would be absent four days a month due to her impairments.  AR 2425.

### b.  The Standard of Review

For claims filed on or after March 27, 2017, the ALJ evaluates the persuasiveness of each medical opinion based on several factors, including supportability, consistency, relationship with the claimant, and specialization.  20 C.F.R. § 404.1520c(a).  The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); 20 C.F.R. § 416.920c(b)(2).  The factor of supportability looks inward at a medical opinion's bases: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be."  20 C.F.R. § 404.1520c(c)(1).  The factor of consistency, on the other hand, looks outward, comparing the opinion to the other evidence in the

record: "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c (c)(2).

The Court reviews the ALJ's persuasiveness determinations under these regulations using the substantial evidence standard. To be upheld, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

  *c. The ALJ's Analysis*

As outlined above, the medical opinions overlapped in significant part, differing only on a narrow range of issues. To the extent the opinions agreed, the ALJ adopted the consensus, finding that Petitioner could sit for six hours a day and walk and stand for two hours a day. AR 1183, 1187-1189. In the areas of disagreement, the ALJ made individualized findings, mostly crediting the state agency reviewers, but crediting Dr. Williams in part and adopting more restrictive limitations on lifting than any of the doctors endorsed. AR 1187-1189. For instance, all the doctors concurred that Petitioner could occasionally lift and carry 20 pounds. AR 125, 153, 1169, and 2426. The ALJ, however, found that Petitioner was more suited to sedentary work, which involves lifting no more than 10 pounds. AR 1188-1189; *see also* 20 C.F.R. § 404.1567(a). To support this conclusion, the ALJ cited to Petitioner's hearing testimony and the medical records documenting bilateral upper extremity pain, some of which the state agency reviewers had not had a chance to consider. AR 1188-1189.

The ALJ also rejected the state agency reviewers claim that Petitioner could work around unprotected heights and moving machinery. AR 127, 155, 1188. Instead, the ALJ credited Dr.

**MEMORANDUM DECISION AND ORDER - 9**

Williams's 2023 opinion, which stated that Petitioner would be unsafe around such hazards.  AR 1188 and 2427.

Petitioner does not challenge any of these findings.  Instead, Petitioner focuses on the two aspects of Dr. Williams's opinions, which could compel a finding of disability.  Specifically, Petitioner claims that the ALJ erred in finding that Petitioner could, contrary to Dr. Williams's opinions, (i) handle frequently rather than occasionally and (ii) perform sedentary work for eight hours a day with a normal rate of absenteeism.  Pt.'s Br. at 9-12 (Dkt. 15) (discussing AR 1170, 1187-1189, 2425, and 2427).  For the reasons set forth below, Petitioner's challenges to these aspects of the ALJ's decision are unavailing.

i.    The ALJ provided sufficient citations to the record.

Petitioner's first challenge to the ALJ's evaluation of the medical opinion evidence is that the ALJ "failed to provide any citations to the record" to support the claim that the opinions of the state agency reviewers were "internally consistent and well supported by a reasonable explanation and the available evidence."  Pt.'s Br. at 7 (Dkt. 15) (citing AR 1187).  This argument is based on an improperly myopic view of the ALJ's decision.  It is true that the ALJ's discussion of Drs. Arnold and Vestal's opinions contains minimal citations to the record.  AR 1188-189.  These paragraphs, however, cannot be read in isolation.  *Kaufmann v. Kijakazi,* 32 F.4th 843, 851 (9th Cir. 2022) (agreeing that a district court "clearly erred" when it failed to consider "*all* the pages of the ALJ's decision"); *see also Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (while an ALJ is required to discuss and evaluate evidence that supports his conclusions, he is not required to do so under any specific heading); *Ozolins v. Saul*, 849 F. App'x 682, 683 (9th Cir. 2021) (unpublished) ("Although the ALJ's explanation might have been more robust, her lengthy evaluation of the evidence elsewhere 'is an adequate statement of

**MEMORANDUM DECISION AND ORDER - 10**

the foundations on which the ultimate factual conclusions are based.'") (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990)).

In the paragraphs preceding the analysis of the medical opinion evidence, the ALJ discussed Petitioner's reported activities and the medical evidence in some detail, along with multiple citations to the record. AR 1184-1187. When these paragraphs are read together, the ALJ's reasoning is not hard to discern. The ALJ believed that Petitioner's reported activities, including crocheting and crafting, and her multiple normal physical examination findings, including findings of normal grip strength, showed that Petitioner could handle frequently and perform sedentary work. AR 1185-1189.

As with many ALJ decisions, this could have been explained with more precision and lucidity. But it is not the Court's role to nitpick the ALJ's writing and citation practices. As long as the Court can reasonably follow the ALJ's reasoning and the evidence rationally supports the ALJ's conclusions, these conclusions must be affirmed. *See Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (internal citation omitted).

Here, the ALJ provided sufficient citations and references to the record to explain the supportability and consistency findings. Petitioner's articulation challenge, accordingly, fails. To the extent Petitioner disagrees with the *substance* of the ALJ's evaluation of the medical opinion evidence, the Court addresses those arguments below.

       ii.      <u>Petitioner's reported activities were a legitimate reason for the ALJ to credit the older opinions about Petitioner's ability to handle over the more recent opinions of Dr. Williams.</u>

One of the Petitioner's primary arguments on appeal is that it was unreasonable for the ALJ to credit the older opinions of the agency doctors over the more recent opinions of Dr. Williams. Pt.'s Br. at 7-11 (Dkt. 15). As part of this argument, Petitioner cites *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007) for the proposition that the opinions of a reviewing consultant are not a valid basis for rejecting the opinions of a treating physician. *Id.* at 10. This was the law under the old regulations. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).

On January 18, 2017, however, the Social Security Administration published comprehensive revisions to the regulations that govern the evaluation of medical evidence. *See* 82 Fed. Reg. 5844. These amendments supplanted case law, like *Orn*, that required ALJs to give greater deference to the opinions of treating physicians. *Woods*, 32 F.4th at 792. Instead, the new regulations set forth a uniform standard for evaluating all medical source opinions. *See* 20 C.F.R. § 404.1520c (The SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Because this case was filed after March 27, 2017, it is this standard that controls. *Woods*, 32 F.4th at 792.

To prevail under this standard, Petitioner must show that the ALJ's decision to credit the opinions of the agency doctors over the opinions of Dr. Williams was not supported by substantial evidence. *Id.* at 787. In other words, Petitioner must show that it was *unreasonable* for the ALJ to reject Dr. Williams's opinions. Petitioner has not satisfied this standard. The ALJ rejected Dr. Williams's opinions about Petitioner's ability to handle as (i) unsupported by his examination findings, which rarely focused on her upper extremities, and (ii) inconsistent with

**MEMORANDUM DECISION AND ORDER - 12**

Petitioner's reported activities, which included regular crocheting, playing games on her Kindle, and crafting. AR 1186, 1188-1189. This analysis appropriately focused on the supportability and consistency of the medical opinion. See 20 C.F.R. § 404.1520c(b)(2). It is also supported by substantial evidence.

In the function report that Petitioner completed in August 2019, Petitioner indicated that her hobbies included reading, crocheting, playing games on her Kindle, and playing card and board games. AR 186 (citing AR 347). These are all activities that require handling. Social Security Rule ("SSR") 85-15, 1985 SSR LEXIS 20, *19 (1985) (defining handling as "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands"). Indeed, when she testified in the fall of 2020, Petitioner admitted that she engages in a "a lot of hand work," including crocheting, and cutting out stickers.[3] AR 48. Consistent with this testimony, Petitioner told medical providers that her hobbies included crafting and stamp collecting. AR 1186 (citing AR 2038 and 2713). Finally, at her second disability hearing, Petitioner testified that she was regularly crocheting, collecting stamps, and making other crafts, such as magnets and cards throughout most of period of alleged disability. AR 1219-1220. It was not until August 2023 that she stopped crocheting to see if that helped with her hand pain. AR 1211, 1219.

---

[3] Petitioner testified that these activities "can sometimes aggravate" her hand and thumb pain. AR 48. Contrary to the thrust of some of Petitioner's arguments, pain alone does not compel a finding of disability. See Mullis v. Astrue, No. CV 11-0542 JPR, 2012 U.S. Dist. LEXIS 2746, 2012 WL 71708, at *6 (C.D. Cal. Jan. 10, 2012) ("the existence of some pain does not constitute a disability if it does not prevent Plaintiff from working") (citing Thorne v. Schweiker, 694 F.2d 170, 171 (8th Cir. 1982)); see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (the social security program is "intended to provide benefits to people who are unable to work; awarding benefits in cases of nondisabling pain would expand the class of recipients far beyond that contemplated by the statute."). Here, Petitioner indicated that she was able to engage in a significant amount of crafting activities throughout most of the period of alleged disability, despite experiencing some level of hand pain.

**MEMORANDUM DECISION AND ORDER - 13**

It was more than reasonable for the ALJ to conclude that these hobbies indicated that Petitioner could use her hands more often than Dr. Williams stated in his October 2020 opinion, which was issued *before* Petitioner testified to engaging in "a lot" of hand work.  *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (a conflict between a medical opinion and a claimant's activity level is a legitimate reason for rejecting the opinion).

Whether these hobbies constituted a legitimate reason to reject Dr. Williams's October 2023 decision is a more complicated issue.  As Petitioner emphasizes, three years passed between Dr. Williams's two opinions.  Petitioner argues that because Dr. Williams was the only medical professional to consider her condition after this point, his opinion should have been adopted over the older opinions of the state agency reviewers.  Pt.'s Br. at 8-12 (Dkt. 15).

Where there is undisputed evidence that a claimant's condition has significantly deteriorated over time, it can be unreasonable for an ALJ to rely on the stale opinions of the state agency reviewers.  *See Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) (holding that the ALJ improperly disregarded the most recent medical reports in favor of older ones, where the record had established that the claimant's condition was "progressively deteriorating" and a report made only six days before the hearing "indicated further deformity of Stone's right foot").  Here, however, the medical evidence Petitioner cites to show that her hand condition worsened over time is equivocal at best.

The primary records that Petitioner cites to show deterioration are two appointments from August and September of 2020, where she sought treatment for left thumb pain.  Pt.'s Br. at 8 (Dkt. 15) (citing AR 945, 951-952).  According to these records, Petitioner experienced worsening thumb pain for a few weeks in August 2020.  AR 951.  Her provider suggested she wear a splint at night, start physical therapy, and limit her crafting to two hours a day.  AR 952.

**MEMORANDUM DECISION AND ORDER - 14**

At a follow-up appointment about a month later, Petitioner reported that physical therapy had improved her thumb pain by 75%. AR 944. Dr. Williams recommended that she continue with conservative management and monitoring. AR 946. Notably, these records predate the first disability hearing where Petitioner testified that she was engaging in "a lot of hand work." They do not show that Petitioner's hand functioning progressively worsened between Dr. Williams's two opinions.

Nor is there any other medical evidence that would have compelled the ALJ to make such a finding. As far as the Court can tell, the only treatment Petitioner sought for hand pain between September 2020 and October 2023, when Dr. Williams issued his second opinion, was (i) an August 16, 2023 visit to her primary care doctor where she was referred to a specialist for right hand pain and (ii) a September 10, 2023 visit one month later with Dr. Williams's office in which Petitioner reported that the right hand pain she had been experiencing for the last few weeks felt like a gout episode to her. AR 1218, 2421-2423 and 2433-2435. Other this this flare-up, Petitioner did not seek *any* treatment from for hand, thumb, or wrist pain for almost three years, even though she had multiple appointments with Dr. Williams and other providers at his practice for various types of foot pain. AR 2400-2420. This accords with the ALJ's observation that Dr. Williams primarily treated Petitioner for lower, not upper extremity pain. AR 1188. It also aligns with (i) Petitioner's admissions that she continued to engage in crocheting and crafting for the vast majority of this period and (ii) Dr. Williams's own opinions, which rated Petitioner's hand functioning the same in October 2020 as in October 2023. *Compare* AR 1170 *with* AR 2427.

Given these facts, the Court cannot conclude that it was unreasonable for the ALJ to treat Petitioner's hand condition as generally stable and to reject Dr. Williams's 2023 opinion about

Petitioner's hands for the same reason he was rejecting Dr. Williams's 2020 opinion about Petitioner's hands.[4]  Petitioner's challenge to the ALJ's evaluation of the medical opinion evidence regarding handling, consequently, fails.

              iii.    <u>The ALJ's failure to explicitly discuss Dr. Williams's opinions on absenteeism was not erroneous.</u>

The last challenge Petitioner raises to the ALJ's evaluation of the medical opinion evidence is that the ALJ committed reversible error when he neglected to specifically address the portions of Dr. Williams's 2023 opinion stating that Petitioner could only work two hours a day and would be absent four days a month.  Pt.'s Br. at 11 (Dkt. 15).  This argument is unpersuasive.

The regulations that govern the evaluation of medical opinion evidence permit an ALJ to address multiple opinions from a single medical source in one analysis.  20 C.F.R. § 404.1520c(b)(1) (explaining that "voluminous case records" necessitate source-level articulation).  An ALJ need not articulate how he considers each aspect of a doctor's medical opinions on a line-by-line or opinion-by-opinion basis.  *Id.*

---

[4] As a corollary to her arguments about the alleged staleness of the agency medical opinions, Petitioner repeatedly claims that the ALJ's rejection of Dr. Williams's 2023 opinion necessarily involved the ALJ improperly "playing doctor."  Pt.'s Br. at 11-12 (Dkt. 20).  This argument overlooks the fact that there is medical evidence – namely, Dr. Williams's own opinions – indicating that Petitioner's hand condition was generally stable over time.  It also ignores the fact that the ALJ accepted Dr. Williams's opinions about how Petitioner's lower extremity conditions limit her ability to stand and walk and make it unsafe for her to work around certain hazards.  Even if the ALJ had not credited these aspects of Dr. Williams's opinions, however, there is no merit to Petitioner's claim that the ALJ lacked the expertise as a lay person to draw inferences about Petitioner's hand functioning from Petitioner's crafting activities and from Petitioner's relatively limited history of treatment for hand pain.  *See Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) ("ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work"); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is "is entitled to draw inferences logically flowing from the evidence" and "need not substitute the judgment of expert witnesses for his own"); and *Patterson v. Saul*, 812 F. App'x 506, 508 (9th Cir. 2020) (unpublished) ("Patterson's contention that the ALJ was 'playing doctor' ignores that consideration of medical records is part and parcel of what an ALJ is supposed to do.").

There may be situations, of course, where source-level articulation does not excuse an ALJ's failure to discuss a critical medical opinion. *See Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995) (the Secretary may not reject "significant probative evidence" without explanation). In the first appeal of this case, for instance, the Court found that the ALJ had erred in failing to discuss Petitioner's hand functioning. *See Sharon W. v. Kijakazi*, No. 1:22-CV-00013-DKG, 2023 WL 246391, at *1 (D. Idaho Jan. 18, 2023).

The same reasoning does not apply here. On remand, the ALJ discussed Dr. Williams's opinions at a relatively granular level, explaining why he was accepting certain limitations and why he was rejecting others. While this discussion did not cover every aspect of Dr. Williams's opinions and did not reference Dr. Williams's opinions about how long Petitioner can work and how often she would be absent, it did not ignore these aspects of Dr. Williams's opinions entirely. 20 C.F.R. § 404.1520c(b)(1). As Respondent notes, the ALJ explained that he was rejecting the other "more restrictive" aspects of Dr. Williams's opinions as inconsistent with Petitioner's normal physical examination findings, her activities of daily living, her statements to other medical providers, and her statements at the disability hearing. AR 1188-1189. In other words, the ALJ grouped Dr. Williams's opinions on work hours and absenteeism into a catch-all category.

The Court is not convinced that these statements were so significant or probative that they required more in-depth treatment. As Respondent stresses, it is unclear how to interpret the portion of Dr. Williams's 2023 opinion stating that Petitioner could not work more than two hours a day, given that Dr. Williams elsewhere opined that Petitioner could engage in work activities, such as reaching, handling, pushing, pulling, crouching, and kneeling, for up to or more than 2/3 of a workday (*i.e.*, for over five hours a day). AR 2426-2427. In addition, as the

**MEMORANDUM DECISION AND ORDER - 17**

ALJ noted, these aspects of Dr. Williams's opinions are not grounded in any examination findings, they are not tied to any specific impairment, and they are not reflected in Petitioner's own account of her limitations. In short, unlike the issues with Petitioner's hand functioning, they are completely untethered to anything else in the record. Given these facts, it was not an error for the ALJ to address these opinions at a general level than an explicit level.

II.     Petitioner's Subjective Symptom Testimony

Petitioner's second challenge on appeal relates to her subjective symptom testimony. According to Petitioner, she is disabled because of a combination of physical and mental conditions, including anxiety and depression, knee pain, back pain, and hand pain. AR 343-350, 1216. For example, Petitioner claims that she cannot sit for very long, cannot stand long enough to make meals, cannot walk for more than 5-10 minutes at a time, and is limited in her ability to use her hands. *Id.*

When evaluating the reliability of such testimony, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991). Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.*

Generalized findings will not satisfy this standard. The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and

**MEMORANDUM DECISION AND ORDER - 18**

did not arbitrarily discredit a claimant's testimony . . . .."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46).  In other words, "the 'clear and convincing' standard requires an ALJ to show his work."  *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

On appeal, the district court's role is to review, not redo, this work.  If the ALJ's rationale for rejecting a petitioner's testimony is "clear enough that it has the power to convince," the Court must affirm whether the Court is personally persuaded by the analysis or not.  *Smartt*, 53 F.4th at 499.

Here, the ALJ acknowledged that Petitioner had some exertional limitations due to pain, but found that she could walk, sit, and handle sufficiently well to perform sedentary work.  AR 1184-1186.  To support these findings, the ALJ cited to various examinations in the record as well as Petitioner's reported activities.  *Id.*  Petitioner is correct that many of the cited medical records predate the period of alleged disability and are of limited relevance.  This alone does not require reversal.  *See Batson*, 359 F.3d at (9th Cir. 2004) (even if the record does not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error will be harmless if the ALJ provides other valid reasons for the decision).

The ALJ cited to multiple records during the period of disability to show that Petitioner could sit, stand, and walk with more facility than she claimed, including Dr. Williams's opinion that Petitioner could walk two hours a day.  AR 1185-1189.  Rather than engage with the substance of these records, Petitioner argues that the ALJ improperly cited this evidence both as lending support for Petitioner's testimony and as showing that Petitioner was not disabled.  Pt.'s Br. at 14-15 (Dkt. 20).  According to Petitioner, the ALJ "cannot have it both ways, either the records support Plaintiff's testimony or they conflict with her testimony."  *Id.*  This argument

**MEMORANDUM DECISION AND ORDER - 19**

ignores the nuances inherent in disability determinations. Medical records can support a petitioner's claim of having a pain-inducing condition, such as degenerative disc disease or osteoarthritis, without supporting a finding that these conditions are as disabling as the petitioner claims. *See Thorne v. Schweiker*, 694 F.2d 170, 171 (8th Cir. 1982) (where evidence establishes that a claimant has a medical condition that causes chronic pain or fatigue, this fact alone does not answer the question of whether a claimant is disabled; the ALJ must consider the severity of the claimant's pain or other limitations).

In this case, for example, it is undisputed that Petitioner is limited by various chronic conditions which restrict how much she can stand, walk, and sit during the day. The question facing the ALJ was how severe these symptoms were and how they impacted Petitioner's ability to work during the period of alleged disability. Petitioner has not shown that the ALJ's findings on these issues lack the power to convince.

The ALJ cited both medical evidence and specific examples of reported activities, including Petitioner's robust crafting hobbies to discount Petitioner's testimony. Taken together, this evidence constituted a clear and convincing evidence to reject Petitioner's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."); *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) (contradiction with the medical record a valid reason for an ALJ to reject a claimant's subjective testimony); and *Fair*, 885 F.2d at 603 ("if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working").

**MEMORANDUM DECISION AND ORDER - 20**

III.    The Statement of Petitioner's Mother

Petitioner's final challenge on appeal is that the ALJ improperly rejected the lay statement of her mother without providing germane reasons for doing so.  Pt.'s Br. at 17-19 (Dkt. 15).  The Ninth Circuit has not yet resolved whether an ALJ must provide germane reasons before rejecting lay statements under the new regulations.[5]  *Crummett v. King*, No. 23-3668, 2025 U.S. App. LEXIS 3235, 2025 WL 470890, at *2 (9th Cir. Feb. 12, 2025); *Stephens v. Kijakazi*, No. 22-25998, 2023 U.S. App. LEXIS 27936, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023); and *Fryer v. Kijakazi*, No. 21-36004, 2022 U.S. App. LEXIS 35651, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022).

The Court need not take a position on this issue, however, because the ALJ's decision satisfies the germane reasons standard.  On remand, the ALJ discussed the statement of Petitioner's mother and explained that he was rejecting this statement for the same reason he was rejecting Petitioner's subjective symptom testimony.  AR 1189.  This constitutes germane reasons under Ninth Circuit law.  *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (as long as the ALJ gives legally sufficient reasons for rejecting a petitioner's testimony, "the ALJ need only point to those reasons when rejecting similar testimony by a [lay] witness") and *Valentine v. Comm'r SSA*, 574 F.3d 685, 694 (9th Cir. 2009) (an ALJ who provides clear and convincing reasons for rejecting a claimant's subjective complaints may legally reject parallel statements by a lay witness for "the same reasons").  Petitioner's final challenge, consequently, fails.

---

[5] On March 7, 2025, the Ninth Circuit issued a published ruling, holding that its "'germane reasons' precedent no longer applies to claims filed on or after March 27, 2017, and in considering such claims, ALJs need not explain their reasons for discounting evidence from nonmedical sources, such as the claimant's friends and family."  *Hudnall v. Dudek*, 130 F.4th 668, 671 (9th Cir. 2025).  On April 7, 2025, this opinion was vacated and withdrawn.  *Hudnall v. Dudek*, No. 23-3727, 2025 WL 1024393, at *1 (9th Cir. Apr. 7, 2025).

**MEMORANDUM DECISION AND ORDER - 21**

## <u>ORDER</u>

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of

Petition to Review (Dkts. 1 & 15) are **DENIED,** and the decision of the Commissioner is

**AFFIRMED.**

DATED: April 22, 2025

Raymond E. Patricco
Chief U.S. Magistrate Judge